UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL ACTION NO. |
| | ) 05-10358-PBS |
| ANTONIO SANTOS, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

January 17, 2007

Saris, U.S.D.J.

## I. **INTRODUCTION**

On June 16, 2005 Taunton Police seized evidence from the apartment of defendant Antonio Santos pursuant to a search warrant.  Santos moves for a Franks Hearing and moves to suppress all evidence derived from the search, alleging that the warrant affidavit made material misrepresentations and that the resulting warrant lacked sufficient particularity.  After hearing oral argument, I **DENY** the motion for Franks hearing and to suppress evidence.

## II. **BACKGROUND**

On June 16, 2005 Taunton Police Detective Edward Pearson filed an application for a state warrant to search 19 Harrison Avenue in Taunton.  Included with the application were Detective Pearson's affidavit, a copy of the Board of Probation criminal history for Santos, the search warrant and the warrant return. The application detailed Pearson's law enforcement training and

experience, and the facts that he relied upon to establish probable cause which were acquired from four main sources.

First, as explained in his affidavit, Pearson acquired much of the information from a confidential informant ("CI") who had supposed familiarity with Santos's drug trafficking activities. Pearson detailed the reliability of the CI, established by the arrests of or indictments against several named individuals. The CI reported that it purchased crack cocaine at 19 Harrison Avenue from a person known as "T" who drove a gray Honda Civic. The CI agreed to make a controlled buy for Pearson, which was completed sometime between June 13 and June 16, 2005. Pearson watched the CI enter 19 Harrison Avenue for the controlled buy, and the CI returned to Pearson with crack cocaine. The CI confirmed that "T" sold the CI the crack cocaine, "T" is a black male with an Afro type hairdo tied in a bun, and "T" drives a gray Honda Civic which is parked at 19 Harrison Avenue.

Second, Pearson reported that the CI's information was corroborated by nearby residents. The Taunton Police had received numerous calls from neighbors complaining of "drug activity" by "a black man with bushy hair tied in the back." Several callers also indicated that the dealer operated the Honda Civic parked in front of 19 Harrison Avenue.

Third, Pearson indicated that "T" had been identified as Santos. The identification was made with the assistance of Taunton Police Officer Jeffrey Martin. Martin was able to stop

the Honda Civic for a defective taillight, at which time the driver produced an identification card identifying himself as Antonio Santos.  Because the car was stopped nearby, the officer then watched Santos enter the dwelling at 19 Harrison Avenue. Pearson's affidavit also summarized the attached criminal history record, noting that Santos had a "15 item criminal history consisting of 4 counts of possession of a class D substance, 2 counts of possession with intent to distribute a class D controlled substance, and one count of unlawful possession of a firearm."

Finally, Pearson referenced police surveillance of 19 Harrison Avenue.  During surveillance, several "known drug addicts" were observed entering the building and exiting minutes later in a manner consistent with drug traffic.  Santos was also observed "keeping watch" out of his second floor window.

Based on the application, on June 16, 2005 a clerk magistrate of Taunton District Court issued the search warrant to Pearson.  Although Pearson's affidavit described the premises to be searched as "19 Harrison Ave 2nd floor," the actual warrant refers only to 19 Harrison Avenue, which it says "consists of 2 floors and a cellar."  There is also no mention of Santos's roommate, Jason Glass, who jointly rented the apartment with Santos and used one of the bedrooms.

The dwelling at 19 Harrison Avenue was in fact a two family home, with an apartment on each floor.  The first floor was

3

occupied by the landlord and property owner, Daniel Salamone, and his family.  Santos and Glass rented the second floor apartment. Both apartments were accessible only through a common front door which remained locked.

On June 16, 2005 Pearson accompanied other Taunton police officers to 19 Harrison Avenue to execute the search warrant. The police gained entry to the building and the second floor apartment using keys recovered from Santos during a traffic stop for driving with a suspended license.  The officers entered only the second floor apartment.  Inside the living room, they recovered a .22 caliber pistol, two digital scales and a scanner. In the bedrooms, they found a citation issued to Santos, an AK 47 with a loaded ammunition clip, copies of a suppression motion filed by Santos, a bank passbook in Santos's name, a baggie containing six .22 caliber bullets, an empty 30-round banana clip, two Chinese fighting stars, $220 in cash, Santos's identification card, and a pair of jeans in the closet containing 3 large rocks of crack cocaine weighing approximately 10 grams.

### III. <u>DISCUSSION</u>

A.   <u>Request for Franks Hearing</u>

To warrant a <u>Franks</u> hearing, a defendant must make "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."  <u>United States v. Rumney</u>, 867 F.2d 714, 720 (1st Cir.

4

1989) (quoting <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978)).
Furthermore, the defendant must show that the misrepresentations
or omissions were material such that the if the affidavit were
corrected, it would no longer support a finding of probable cause
to issue the search warrant.  <u>Id.</u>

    1.  <u>Misrepresentation of Criminal History</u>

    Defendant argues that Pearson misrepresented the extent of
Mr. Santos's criminal history.  Specifically, defendant contents
that Pearson represented to the court that Mr. Santos's criminal
history included six drug related crimes, when he had only been
convicted of four such offenses, and that Pearson noted that the
criminal history was fifteen items long without mentioning that
only six of the items actually resulted in a conviction.  This,
defendant contends, "created the impression that Mr. Santos had
been found guilty of nine more crimes than he had actually been
convicted of."  (Def. Mot. for Franks Hr'g and to Supp. Evidence
9.)

    Defendant's argument is unpersuasive.  In the search warrant
affidavit, Pearson wrote:

> That Santos has a 15 item criminal history consisting
> of 4 counts of possession of a class D controlled
> substance.  Two counts of possession [with intent to]
> distribute class D controlled substance.  And one count
> of unlawful possession of a firearm.  See Criminal
> history attached and incorporated herein.

(Search Warrant Aff. ¶ 11, Docket No. 28-2.)  There are in fact
fifteen items listed in Santos's criminal history.  (<u>See</u> Board of

Probation Criminal History, Docket No. 28-2 at 8-9.)  While the
term "items" is ambiguous, it does not suggest that they are all
convictions nor can defendant show that Pearson made the
statement with reckless disregard for the truth.  Pearson
actually understated Santos's criminal history because the
criminal history shows that there were five, rather than four,
Class D Possession charges.  (See id.)  Furthermore, all evidence
confirms that the criminal history was attached to the affidavit,
and thus available to the magistrate for clarification of any
ambiguities.  (See Search Warrant Aff. ¶ 11; Pearson Aff. ¶ 6,
Docket No. 30.)

        Finally, regardless of whether Pearson's statements were
misrepresentations, defendant cannot show that they were material
to the probable cause determination.  It is undisputed that
Santos was convicted of six crimes, four of which were drug
possession charges, two of those with the intent to distribute.
This provides sufficient support, along with the additional
evidence from the CI, the surveillance and the residents, to find
probable cause to search the apartment for evidence of illegal
drug activity.

        2.   The Apartment Omissions

        Defendant first asserts that Pearson's affidavit omitted
any reference to the fact that 19 Harrison Avenue had two
apartment units and that the second floor unit had more than one
occupant.  Defendant contends that these omissions were material

to the probable cause determination because they show that the
high volume of visitors to the building could be explained by the
presence of multiple occupants rather than drug activity.

While there is little evidence to help determine whether
Pearson acted with reckless disregard for the truth, there is
ample evidence to show that the omissions were not material to
the probable cause determination.  First, heavy foot traffic, as
described by Pearson, is in itself suggestive of drug activity.
See United States v. Hernandez Leon, 379 F.3d 1024, 1027 (8th
Cir. 2004) ("observations of heavy foot and vehicle traffic"
supported a finding of probable cause based on a narcotics
officer's experience); see also United States v. Moore, 235 F.3d
700, 703-04 (observing "significant foot traffic suggesting
ongoing drug sales" supported a finding that Terry stop was
reasonable).  Pearson also identified by name three drug addicts
whom he had seen visiting 19 Harrison Avenue.  (Search Warrant
Aff. ¶ 12.)  Neighbors had also called to complain about drug
activity at 19 Harrison Avenue.  (Id. ¶ 10.)  Neighbors
specifically described the person dealing drugs as "a black male
with bushy hair tied in the back."  (Id.)  This was consistent
with the CI's description of "T."  Finally, the CI made a
controlled buy of crack cocaine from "T" in the second floor
apartment of 19 Harrison Avenue.  (Id. ¶ 7-8.)  There was more
than enough evidence to give probable cause that drug sales were
occurring on the second floor of 19 Harrison Avenue, regardless

7

of whether it was a one or two unit dwelling.

In addition, it makes no difference whether Santos occupied the apartment alone or with a roommate.  "Search warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." Zurcher v. The Stanford Daily, 436 U.S. 547, 555 (1978) (internal quotes omitted).  The search warrant affidavit provided probable cause to believe that the second floor of 19 Harrison Avenue contained evidence of drug activity, regardless of whether or not anyone else shared the apartment with the defendant.  See United States v. Owens, 167 F.3d 739, 745 (1st Cir. 1999) (affirming denial of Franks hearing despite the omission of evidence that defendant resided with another person because it is "immaterial whether [defendant] was living there alone or with others").

Defendant also asserts that Pearson omitted the fact that the front door to 19 Harrison Avenue was locked and required a key or the assistance of a tenant for entry.  This, he contends, was material because it makes it "extremely implausible that a constant stream of 'drug addicts' could have been accessing the building, at least without arousing the attention of Salamone, who noticed no such unusual traffic."  Defendant relies upon the unsworn statements of Salamone, obtained during a phone call with a private investigator, stating that "there was no noticeable traffic into [Santos's and Glass's] apartment."  (Docket No. 25-2

8

at 20.)

A defendant's allegations for the purposes of a <u>Franks</u> hearing should be supported by "affadavits or sworn or otherwise reliable statements of witnesses." <u>Franks</u>, 438 U.S. at 171. Here, the unsworn testimony by Salamone is called into question by statements that Salamone reportedly made to an agent of the Bureau of Alcohol, Tobacco, Firearms & Explosives. The agent's report indicates that "Salamone said that his bedroom door was right by the front door and advised that there was a lot of activity in and out of that front door going upstairs."

Furthermore, including the information that the common front door was locked would support other information provided by Pearson's affidavit and thus strengthen the probable cause determination. The existence of the locked door corroborates Pearson's report that he "observed Santos keeping watch out of his 2nd floor window." Presumably, since the door was locked Santos would have to know when visitors arrived so that he could go downstairs to let them inside. This is consistent with the reports of high foot traffic into the building.

    3.  <u>The Omission of Jason Glass</u>

Defendant's final argument is that "Pearson may have omitted the possible involvement of Jason Glass with the police and/or the CI with reckless disregard for the truth." Defendant notes that it is "curious" that Pearson neglected to ever mention Glass despite doing surveillance of 19 Harrison Avenue and identifying

several visitors to the dwelling.  Defendant also suggests that
the CI must have known that Glass lived in the apartment given
his meetings there with Santos, and further suggests a possible
involvement between Glass and the police or the CI.

As indicated by the language used in defendant's brief, the
argument is highly speculative.  First, to warrant a <u>Franks</u>
hearing the omission from a search warrant affidavit must be
"only that of the affiant, not of any nongovernmental informant."
<u>Franks</u>, 438 U.S. at 171.  Thus, even if the CI knew Glass and
deliberately did not mention him, it is immaterial to this
analysis.  Second, the CI reported seeing no one else in the
apartment and Pearson stated under oath that he was not aware of
the existence of Glass until after the search warrant had been
executed.  (Pearson Aff. ¶ 3).  Finally, Pearson stated under
oath that he doesn't know of any connection between Glass and the
CI.  (<u>Id.</u>)  Defendant thus fails to make a showing that the
omission of Glass was done with deliberateness or recklessness.

Defendant has failed to make a substantial showing that
Pearson made any misrepresentations or omissions that were
intentional, reckless, or material.  The motion for the Franks
hearing is denied.

B.   <u>Particularity of the Search Warrant</u>

Defendant moves to suppress all evidence seized pursuant to
the search warrant, contending that the warrant and Pearson's
affidavit failed to describe the place to be searched with

10

sufficient particularity.  Defendant specifically notes that the warrant authorizes a search of the entire dwelling at 19 Harrison Avenue, and that Pearson's affidavit refers to the entire second floor, thus including the bedroom of Glass.

The Fourth Amendment particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84.  "[S]earch warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided." United States v. Bonner, 808 F.2d 864, 868 (1st Cir. 1986).  "The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" United States v. Pervaz, 118 F.3d 1, 9 (1st Cir. 1997) (quoting United States v. Bonner, 808 F.2d 864, 866 (1st Cir. 1986)).

Although the search warrant facially referred only to 19 Harrison Avenue, Pearson's affidavit made several references to the second floor of the dwelling as the site of the criminal activity.  "An affidavit may be referred to for purposes of providing particularity if the affidavit accompanies the warrant, and the warrant uses suitable words of reference which

incorporate the affidavit." United States v. Roche, 614 F.2d 6, 8 (1st Cir. 1980) (quoting United States v. Klein, 565 F.2d 183, 186 n.3 (1st Cir. 1977)).  Here, the warrant and the affidavit can be read together to reference the second floor of the dwelling because Pearson's affidavit was attached to the search warrant and the warrant included sufficient language of incorporation.

Furthermore, the knowledge of executing officers can be considered in determining the sufficiency of the description of the premises to be searched.  United States v. Vega-Figueroa, 234 F.3d 744, 756 (1st Cir. 2000).  In Vega-Figueroa, the court found that despite the fact that the search warrant mistakenly listed the incorrect building, the warrant was valid because the officer who made the reports upon which the warrant was based was also the officer who executed the warrant and correctly directed his team to the defendant's apartment.  Id.  Here, Pearson made personal observations of the dwelling, his affidavit was the basis for the warrant, and he led the search warrant execution team successfully to Santos's apartment.  Thus, contrary to what the defendant argued, there was no reasonable possibility that anywhere other than the second floor apartment could have been searched.

Finally, the reference to the second floor apartment was sufficient particularity, regardless of whether Santos shared the unit.  See United States v. Gilman, 684 F.2d 616, 618 (9th Cir.

12

1982) ("The general rule voiding the warrant for an undisclosed multiunit structure does not apply if the defendant was in control of the whole premises or they were occupied in common, if the entire premises were suspect, or if the multiunit character of the premises was not known to the officers."). Here, the apartment was a single unit for residential use. Santos had access to all areas of the apartment. Pearson testified that he had no knowledge of Glass or that another person resided on the second floor. (Pearson Aff. ¶ 3.) There is also evidence that Glass had moved out of the apartment at some point. (See Glass Grand Jury Test., December 14, 2005, 11-12, Docket No. 28-4; Pearson Grand Jury Test., Aug. 30, 2005, 31, Docket No. 25-2.) The search warrant was sufficiently particular to allow the officers to identify the suspected location of drug activity, and the officers did in fact properly identify that location.

### ORDER

The defendant's motion for a Franks hearing and to suppress evidence is **DENIED**.


 **S/PATTI B. SARIS**
United States District Judge

13